<table>
<tr><td><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

United States Bankruptcy Court for the:

District of Delaware

Case number (*If known*): _____ Chapter 15

☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

*If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).*

| | |
|---|---|
| 1. **Debtor's name** | Aldo U.S. Inc. |

**2. Debtor's unique identifier**

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)    1  4 – 1  7  3  6  7  0  4

☐ Other _____. Describe identifier _____.

**For individual debtors:**

☐ Social Security number:    xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

**3. Name of foreign representative(s)**

The Aldo Group Inc.

**4. Foreign proceeding in which appointment of the foreign representative(s) occurred**

Proceeding under the Companies' Creditors Arrangement Act, pending before the Superior Court, Commercial Division, in and for the Judicial District of Montreal, Canada (Court File No. CV 500-11-058644-200)

**5. Nature of the foreign proceeding**

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____

_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

Debtor    Aldo U.S. Inc.
          Name

Case number *(if known)*_____

---

**8.  Others entitled to notice**     Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.  Addresses**

**Country where the debtor has the center of its main interests:**

Canada

**Debtor's registered office:**

1209 Orange St.,     c/o The Corporation Trust
Number     Street         Company

P.O. Box

Wilmington  Delaware          19801
City          State/Province/Region      ZIP/Postal Code

United States
Country

**Individual debtor's habitual residence:**

Number     Street

P.O. Box

City          State/Province/Region    ZIP/Postal Code

Country

**Address of foreign representative(s):**

2300      rue Émile-Bélanger
Number     Street

P.O. Box

Montreal    Québec        H4R 3J4
City          State/Province/Region    ZIP/Postal Code

Canada
Country

---

**10.  Debtor's website** (URL)     www.aldoshoes.com

---

**11.  Type of debtor**     *Check one:*

☑ Non-individual (*check one*):

☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

❑ Partnership

❑ Other.  Specify: _____

❑ Individual

---

| Debtor | Aldo U.S. Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**12. Why is venue proper in *this district*?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____ .

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:
of parent and affiliates chapter 15 filings_____ .

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ David Galarneau
Signature of foreign representative

David Galarneau, on behalf of The Aldo Group Inc., in its capacity as foreign representative
Printed name

Executed on    05/07/2020
MM  / DD / YYYY

✗
Signature of foreign representative

Printed name

Executed on
MM / DD / YYYY

**14. Signature of attorney**

✗ Eric D. Schwartz
Signature of Attorney for foreign representative

Date    05/07/2020
MM   / DD / YYYY

Eric D. Schwartz
Printed name

Morris Nichols Arsht & Tunnell LLP
Firm name

1201 North Market Street, 16th Floor
Number        Street

Wilmington                          DE        19801
City                                State      ZIP Code

(302) 698-9200                      eschwartz@mnat.com
Contact phone                       Email address

3134                                DE
Bar number                          State

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 15 |
| | ) |
| The Aldo Group Inc., *et al.*[1] | ) Case No. 20-_____ (      ) |
| | ) |
| Debtors in Foreign Proceedings. | ) (Joint Administration Requested) |
| | ) |

## CORPORATE OWNERSHIP STATEMENT

The following corporate ownership statement is made pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure:

- 2300 Investment Holdings Inc. directly owns more than 10% of the equity interests of The Aldo Group Inc.  No other corporation directly or indirectly owns more than 10% of the equity interests of The Aldo Group Inc.

- 2300 Investment Holdings Inc. directly owns more than 10% of the equity interests of Southwest Capital Holdings Inc.  No other corporation directly or indirectly owns more than 10% of the equity interests of Southwest Capital Holdings Inc.

- Aldo U.S. Inc. is wholly owned by The Aldo Group Inc.

- Aldo U.S.  Inc. wholly owns the remaining Debtors:

  o   Aldo Marketing LLC

  o   Aldo Shoes West Forty Second, LLC

  o   Aldo 1125 Third Ave. Corp.

  o   Aldo 5th Ave. Inc.

---

[1]     The Debtors in these chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers or other unique identifier are as follows: The Aldo Group Inc. (2186); Southwest Capital Holdings Inc. (8248); Aldo U.S. Inc. (6704); Aldo Marketing LLC (1748); Aldo Shoes West Forty Second, LLC (2610); Aldo 1125 Third Ave. Corp. (2110); Aldo 5th Ave. Inc. (2112); Aldo 250 West 125 Inc. (2324); and 1230 Avenue of the Americas LLC (6704).  The Debtors' principal offices are located at 2300 rue Émile-Bélanger, Montréal, Canada H4R 3J4.

    o   Aldo 250 West 125 Inc.

    o   1230 Avenue of the Americas LLC

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 7, 2020                _/s/ David Galarneau_____
                                  David Galarneau
                                  Vice President of Finance and Corporate Controller
                                  of The Aldo Group Inc., in its capacity as Foreign
                                  Representative

# SUPERIOR COURT
## Commercial Division

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTREAL


No:    500-11-058644-220


DATE:  May 7, 2020

_____

**PRESIDING:  THE HONOURABLE MICHEL A. PINSONNAULT, J.S.C.**

_____

**IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF:**

**THE ALDO GROUP INC.**
-and-
**SOUTHWEST CAPITAL HOLDINGS INC.**

-and-

**ALDO U.S. INC.**
-and-
**ALDO MARKETING LLC**
-and-
**ALDO SHOES WEST FORTY SECOND, LLC**
-and-
**ALDO 1125 AVE. CORP.**
-and-
**1230 AVENUE OF THE AMERICAS LLC**
-and-
**ALDO 5th AVE. INC.**
-and-
**ALDO 250 WEST 125 INC.**

        Petitioners

JP1736

500-11-058644-200                                                    PAGE:   2

-and-

**ERNST & YOUNG INC.**

   Monitor
-and-

**EUROPEAN INVESTMENTS HOLDINGS SARL**

   Impleaded Party

---

### FIRST INITIAL ORDER

---

**ON READING** Petitioners' *Petition for the issuance an initial order and an amended and restated initial order* pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36 (as amended the "**CCAA**") and the exhibits, the affidavit filed in support thereof (the "**Petition**"), the consent of Ernst & Young Inc., a licensed insolvency trustee, to act as monitor (the "**Monitor**"), relying upon the submissions of counsel and being advised that the interested parties, including secured creditors who are likely to be affected by the charges created herein were given prior notice of the presentation of the Petition;

**GIVEN** the provisions of the CCAA;

**WHEREFORE, THE COURT**:

1.    **GRANTS** the Petition.

2.    **ISSUES** an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

   - Service

   - Application of the CCAA

   - Effective Time

   - Plan of Arrangement

   - Stay of Proceedings against the Petitioners and the Property

   - Stay of Proceedings against the Directors and Officers

   - Possession of Property and Operations

- No Exercise of Rights or Remedies;

- No Interference with Rights

- Continuation of Services

- Non-Derogation of Rights

- Cash Management

- Interim Financing (DIP)

- Directors' and Officers' Indemnification and Charge

- Restructuring

- Powers of the Monitor

- Gifts Cards and Loyalty Program

- Priorities and General Provisions Relating to CCAA Charges

- General

**Service**

3.    **DECLARES** that sufficient prior notice of the presentation of this Petition has been given by The Aldo Group Inc., Aldo U.S. Inc., Southwest Capital Holdings Inc., Aldo Marketing LLC, Aldo Shoes West Forty Second, LLC, Aldo 1125 Third Ave Corp., 1230 Avenue of the Americas LLC, Aldo 5th Ave. Inc. and Aldo 250 West 125 Inc. (collectively "the **Petitioners**") to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

**Application of the CCAA**

4.    **DECLARES** that each of the Petitioners is a debtor company to which the CCAA applies.

**Effective time**

5.    **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this Order (the "**Effective Time**").

**Plan of Arrangement**

6.   **DECLARES** that the Petitioners shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

**Stay of Proceedings against the Petitioners and the Property**

7.   **ORDERS** that, until and including May 17, 2020, (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Petitioners or European Investments Holdings SARL herein (collectively, the "**Aldo Parties**"), or affecting the Aldo Parties' business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph 10 hereinbelow except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Aldo Parties or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

7.1   The rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

**Stay of Proceedings against the Directors and Officers**

8.   **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Aldo Parties nor against any person deemed to be a director or an officer of the Aldo Parties under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Aldo Parties where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

**Possession of Property and Operations**

9.   **ORDERS** that each of the Aldo Parties shall remain in possession and control of its present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this order.

500-11-058644-200                                                    PAGE:  5

**No Exercise of Rights or Remedies**

10.    **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Aldo Parties, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

11.    **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Aldo Parties or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period.  Without limitation to the foregoing, in the event that the Petitioners become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of the Aldo Parties, the period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the Petitioners in determining the 30 day period referred to in Section 81.1 of the BIA or the 15 day period referred to in Section 81.2 of the BIA.

**No Interference with Rights**

12.    **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Aldo Parties, except with the written consent of the Aldo Parties, the Interim Lender and the Monitor, or with leave of this Court.

**Continuation of Services**

13.    **ORDERS** that during the Stay Period and subject to paragraph 15 hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Aldo Parties or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Aldo Parties, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Aldo Parties, and that the Aldo Parties shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such

goods or services received after the date of the Order are paid by the Aldo Parties, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Aldo Parties or such other practices as may be agreed upon by the supplier or service provider and the Aldo Parties, with the consent of the Monitor, or as may be ordered by this Court.

14.    **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Aldo Parties on or after the date of this Order, nor shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to the Aldo Parties.

15.    **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by the Aldo Parties with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by Aldo Parties and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Aldo Parties' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

16.    **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of the Aldo Parties shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Cash Management**

17.    **ORDERS** that the Petitioners shall be entitled to continue to utilize the central cash management system currently in place or replace it with another substantially similar central cash management system (the "**Cash Management System**"), in each case, solely to the extent acceptable to the

Interim Lender, and so long as the Monitor shall have oversight over such Cash Management System.

**Interim Financing (DIP)**

18.     **ORDERS** that Petitioners be and are hereby authorized to borrow, repay and reborrow from National Bank of Canada (the "**Interim Lender**") such amounts from time to time as Petitioners may consider necessary or desirable, up to a maximum principal amount of $5,000,000 outstanding at any time, on the terms and conditions as set forth in the Interim Financing Term Sheet attached hereto as Schedule A (the "**Interim Financing Term Sheet**") and in the Interim Financing Documents (as defined hereinafter), to fund the ongoing expenditures of Petitioners and to pay such other amounts as are permitted by the terms of the Order and the Interim Financing Documents (as defined hereinafter) (the "**Interim Facility**");

19.     **ORDERS** that Petitioners are hereby authorized to execute and deliver such credit agreements, security documents and other definitive documents (collectively the "**Interim Financing Documents**") as may be required by the Interim Lender in connection with the Interim Facility and the Interim Financing Term Sheet, and Petitioners are hereby authorized to perform all of their obligations under the Interim Financing Documents;

20.     **ORDERS** that Petitioners shall pay to the Interim Lender, when due, all amounts owing (including principal, interest, fees and expenses, including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Interim Lender, on a full indemnity basis (the "**Interim Lender Expenses**")) under the Interim Financing Documents and shall perform all of their other obligations to the Interim Lender pursuant to the Interim Financing Term Sheet, the Interim Financing Documents and the Order;

21.     **DECLARES** that all of the Property of The Aldo Group Inc. ("**Aldo Canada**") and Aldo U.S. Inc. ("**Aldo US**") is hereby subject to a charge and security for an aggregate amount of $6,000,000  (such charge and security is referred to herein as the "**Interim Lender Charge**") in favour of the Interim Lender as security for all obligations of Petitioners to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender Expenses) under or in connection with the Interim Financing Term Sheet and the Interim Financing Documents.  The Interim Lender Charge shall have the priority established by paragraphs 43 and 44 of this Order;

22.     **ORDERS** that the claims of the Interim Lender pursuant to the Interim Financing Documents shall not be compromised or arranged pursuant to the Plan or these proceedings and the Interim Lender, in that capacity, shall be treated as an unaffected creditor in these proceedings and in any Plan;

23.  **ORDERS** that the Interim Lender may:

   (a)  notwithstanding any other provision of the Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the Interim Lender Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

   (b)  notwithstanding the terms of the paragraph to follow, refuse to make any advance to Petitioners if the Petitioners fail to meet the provisions of the Interim Financing Term Sheet and the Interim Financing Documents;

24.  **ORDERS** that the Interim Lender shall not take any enforcement steps under the Interim Financing Documents or the Interim Lender Charge without providing at least 5 business days written notice (the "**Notice Period**") of a default thereunder to the Petitioners, the Monitor and to creditors whose rights are registered or published at the appropriate registers or requesting a copy of such notice.  Upon expiry of such Notice Period, the Interim Lender shall be entitled to take any and all steps under the Interim Financing Documents and the Interim Lender Charge and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA;

25.  **ORDERS** that, subject to further order of this Court, no order shall be made varying, rescinding, or otherwise affecting paragraphs 18 to 24 hereof unless either (a) notice of a motion for such order is served on the Interim Lender by the moving party within seven (7) days after that party was served with the Order or (b) the Interim Lender applies for or consents to such order;

26.  **ORDERS** that the Petitioners shall be entitled to continue to utilize the various bank accounts currently in place (the "**Bank Accounts**") with, among others, Bank of Montreal (a "**Bank Accounts Holder**") and **ORDERS** that cash or cash equivalents placed on deposit by the Petitioners (including the amounts advanced by the Interim Lender) with any Bank Accounts Holder during the Stay Period shall not be applied by such Bank Accounts Holder in reduction or repayment of amounts owing to such Bank Accounts Holder as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any Bank Accounts Holder from: (i) reimbursing itself for the amount of any cheques drawn by Petitioners and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Petitioners' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Directors' and Officers' Indemnification and Charge**

27.  **ORDERS** that the Petitioners shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued

by reason of or in relation to their respective capacities as directors or officers of the Petitioners after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross neglicence, wilful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

28.    **ORDERS** that the Directors of the Petitioners shall be entitled to the benefit of and are hereby granted a charge and security in the Property of Aldo Canada and Aldo US to the extent of the aggregate amount of $2,350,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph 27 of this Order as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time.  The Directors' Charge shall have the priority set out in paragraphs 43 and 44 of this Order.

29.    **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph 27 of this Order.

**Restructuring**

30.    **DECLARES** that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Petitioners shall have the right, subject to approval of the Monitor or further order of the Court, to:

(a)    permanently or temporarily cease, downsize or shut down any of their operations or locations as it deems appropriate and make provision for the consequences thereof in the Plan;

(b)    pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other maner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

(c)    convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $100,000 or $500,000 in the aggregate;

(d)    terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as it deems appropriate and, to the extent any amounts in lieu of notice, termination or

severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Petitioners and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Petitioners may determine;

(e)     subject to the provisions of section 32 CCAA, disclaim or resiliate, any of their agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Petitioners and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and

(f)     subject to section 11.3 CCAA, assign any rights and obligations of Petitioners.

31.    **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the Petitioners pursuant to section 32 of the CCAA and subsection 30(e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Petitioners and the Monitor 24 hours prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Petitioners, provided nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

32.    **ORDERS** that the Petitioners shall provide to any relevant landlord notice of the Petitioners' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Petitioners have already vacated the leased premises, it shall not be considered to be in occupation of such location pending the resolution of any dispute between the Petitioners and the landlord.

33.    **DECLARES** that, in order to facilitate the Restructuring, the Petitioners may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

34.    **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, and equivalent provisions of the *Act Respecting the Protection of Personal Information in the Private Sector*, R.S.Q. c. P-39.1, the Petitioners are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective

investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Petitioners or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

**Powers of the Monitor**

35.    **ORDERS** that Ernst & Young Inc., a licensed insolvency trustee, is hereby appointed to monitor the business and financial affairs of the Petitioners as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in section 23 of the CCAA:

(a)    shall, without delay, (i) publish once a week for two (2) consecutive weeks, in the National Post, La Presse and the Wall Street Journal and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Petitioners of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b)    shall monitor the Petitioners' receipts and disbursements;

(c)    shall assist the Petitioners, to the extent required by the Petitioners, in dealing with their creditors and other interested Persons during the Stay Period;

(d)    shall assist the Petitioners, to the extent required by the Petitioners, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e)     shall advise and assist the Petitioners, to the extent required by the Petitioners, to review the Petitioners' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(f)     shall assist the Petitioners, to the extent required by the Petitioners, in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)     shall report to the Court on the state of the business and financial affairs of the Petitioners or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(h)     shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

(i)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(j)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(k)     may act as a "foreign representative" of the Petitioners or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

(l)     may give any consent or approval as may be contemplated by the Order or the CCAA; and

(m)    may perform such other duties as are required by the Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Petitioners, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Petitioners.

36.   **ORDERS** that the Petitioners and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Petitioners in connection with the Monitor's duties and responsibilities hereunder.

37.   **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Petitioners with information in response to requests made by them in writing addressed to the Monitor and copied to the Petitioners' counsel. In the case of information that the Monitor has been advised by the Petitioners is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Petitioners unless otherwise directed by this Court.

38.   **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Petitioners or continues the employment of the Petitioners' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

39.   **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least seven days notice to the Monitor and its counsel.  The entities related to or affiliated with the Monitor referred to in subparagraph 35(i) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

40.   **ORDERS** that Petitioners shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Petitioners' legal counsel and other advisers, directly related to these proceedings and the Plan, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

41.   **DECLARES** that the Monitor, the Monitor's legal counsels, if any, the Petitioners' legal counsels and the Monitor and the Petitioners' respective advisers (including Greenhill & Co. Canada Ltd.), as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings and the Plan, be entitled to the benefit of and are hereby granted a charge and security in the Property of Aldo Canada and Aldo US to the extent of the aggregate amount of $920,000 (the "**Administration Charge**"), having the priority established by paragraphs 43 and 44 hereof.

500-11-058644-200                                                    PAGE: 14

**Gifts Cards and Loyalty Program**

42.   **AUTHORIZES,** notwithstanding anything to the contrary in this Order, the Petitioners to continue to honour or comply with any customer deposits, pre-payments and similar programs (like gift cards) offered by the Petitioners;

**Priorities and General Provisions Relating to CCAA Charges**

43.   **DECLARES** that the priorities of the Administration Charge, the Interim Lender Charge and Directors' Charge (collectively, the "**CCAA Charges**"), as between them with respect to any Property to which they apply, shall be as follows:

   (a)   first, the Administration Charge;

   (b)   second, the Directors' Charge; and

   (c)   third, the Interim Lender Charge.

44.   **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances.

45.   **ORDERS** that, except as otherwise expressly provided for herein, the Petitioners shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Petitioners obtains the prior written consent of the DIP Lender, the Monitor and the prior approval of the Court.

46.   **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Petitioners, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

47.   **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any application for a bankruptcy order filed pursuant to the BIA in respect of the Petitioners or any bankruptcy order made pursuant to any such application or any assignment in bankruptcy made or deemed to be made in respect of the Petitioners; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Petitioners (a "**Third Party**

**Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

(a)     the creation of any of the CCAA Charges shall not create or be deemed to constitute a breach by the Petitioners of any Third Party Agreement to which it is a party; and

(b)     any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

48.   **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any application for a bankruptcy order filed pursuant to the BIA in respect of the Petitioners and any bankruptcy order allowing such application or any assignment in bankruptcy made or deemed to be made in respect of the Petitioners, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Petitioners pursuant to the Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances, transfers at undervalue or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

49.   **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Petitioners and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Petitioners, for all purposes.

**General**

50.   **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the Petitioners or of the Monitor in relation to the Business or Property of the Petitioners, without first obtaining leave of this Court, upon ten (10) days written notice to the Petitioners' and the Interim Lender's counsel and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

51.   **DECLARES** that the Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Petitioners under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

52.   **DECLARES** that, except as otherwise specified herein, the Petitioners and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular

or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Petitioners and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

53.   **DECLARES** that the Petitioners and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses.

54.   **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the solicitors for the Petitioners and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the Monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings;

55.   **DECLARES** that the Petitioners or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

56.   **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days notice to the Petitioners, the Monitor and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order, such application or motion shall be filed during the Stay Period ordered by this Order, unless otherwise ordered by this Court;

57.   **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada;

58.   **DECLARES** that either the Monitor or Aldo Canada (on behalf of all the Petitionners) shall be authorized to apply and act as "foreign representative" of the Petitioners as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, Switzerland or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the U.S. *Bankruptcy Code (US Code,* Title 11) (the "**Chapter 15 Relief**"). All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor or Aldo Canada as may be deemed necessary or appropriate for that purpose;

59.    **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order.

60.    **ORDERS** that Exhibits R-6, R-7, R-8, R-9, R-10, R-11, R-12, R,15, Schedules B and C of R-17, R-21, R-22 and R-23 be kept under seal until further order from this Court.

61.    **ORDERS** the provisional execution of the Order notwithstanding any appeal.

62.    **FIXES** the hearing date on the Petition for the Amended and Restated Initial Order on **May 15, 2020** at 9:30 am by videoconference.

_____
MICHEL A. PINSONNAULT, J.S.C.


Hearing date:        May 7, 2020